PETITION FOR WRIT OF HABEAS CORPUS: 28 USC §2254 (Rev. 10/99)

**FILED**

MAR 3 1 2006

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE _Western_ DISTRICT OF TEXAS

_Waco_ Division

### PETITION FOR A WRIT OF HABEAS CORPUS BY A
### PERSON IN STATE CUSTODY

*Evidentiary Hearing Requested*

_Lane, David_
PETITIONER
(Full name of Petitioner)

VS.

_Doug Dretke_
RESPONDENT
(Name of TDCJ Director, Warden, Jailor, or
authorized person having custody of petitioner)

_Hughes Unit_
CURRENT PLACE OF CONFINEMENT

_10 69 082_
PRISONER ID NUMBER

**W06CA094**
CASE NUMBER
(Supplied by the Clerk of the District Court)

---

### INSTRUCTIONS - READ CAREFULLY

1.   The petition must be legibly handwritten or typewritten, and signed by the petitioner, under penalty of perjury. Any false statement of an important fact may lead to prosecution for perjury. Answer all questions in the proper space on the form.

2.   Additional pages are not allowed except in answer to questions 11 and 20. Do not cite legal authorities. Any additional arguments or facts you want to present must be in a separate memorandum.

3.   When the Clerk of Court receives the $5.00 filing fee, the Clerk will file your petition if it is in proper order.

4.   If you do not have the necessary filing fee, you may ask permission to proceed *in forma pauperis*. To proceed *in forma pauperis*, (1) you must sign the declaration provided with this petition to show that you cannot prepay the fees and costs, and (2) if you are confined in TDCJ-ID, you must send in a certified *In Forma Pauperis* Data Sheet from the institution in which you are confined. If you are in an institution other than TDCJ-ID, you must send in a certificate completed by an authorized officer at your institution certifying the amount of money you have on deposit at that institution. If you have access or have had access to enough funds to pay the filing fee, then you must pay the filing fee.

5.  Only judgments entered by one court may be challenged in a single petition. If you want to challenge judgments entered by different courts, either in the same state or in different states, you must file separate petitions as to each court.

6.  Include all your grounds for relief and all the facts that support each ground for relief in this petition.

7.  When you have finished filling out the petition, mail the original and two copies to the Clerk of the United States District Court for the federal district within which the State court was held which convicted and sentenced you, or to the federal district in which you are in custody. A "VENUE LIST," which lists U.S. District Courts in Texas, their divisions, and the addresses for the clerk's office for each division, is posted in your unit law library. You may use this list to decide where to mail your petition.

8.  Petitions that do not meet these instructions may be returned to you.

## PETITION

**What are you challenging?** (Check only one)

- ☒ A judgment of conviction or sentence, probation or deferred-adjudication probation — (Answer Questions 1-4, 5-12 & 20-23)
- ☐ A parole revocation proceeding. — (Answer Questions 1-4, 13-14, & 20-23)
- ☐ A disciplinary proceeding. — (Answer Questions 1-4, 15-19 & 20-23)

**All petitioners must answer questions 1-4:**

1.  Name and location of the court (district and county) which entered the conviction and sentence that you are presently serving or that is under attack:
    331 st travis county

2.  Date of judgment of conviction: Late oct., early Nov. 2001

3.  Length of sentence: "Life"

4.  Nature of offense and docket number (if known): 9014067 capital murder

**Judgment of Conviction or Sentence, Probation or Deferred-Adjudication Probation:**

5.  What was your plea? (Check one)

    ☒ Not Guilty    ☐ Guilty    ☐ Nolo contendere

6.  Kind of trial: (Check one)   ☒ Jury    ☐ Judge Only

- 2 -

CONTINUED ON NEXT PAGE

7.  Did you testify at the trial?   ☐   Yes      ☒   No

8.  Did you appeal the judgment of conviction?   ☒   Yes   ☐   No

9.  If you did appeal, in what appellate court did you file your direct appeal?

_3 rd Dist ct. Appeals (Austin)_ Cause Number (if known) _03·00625-CR_

What was the result of your direct appeal (affirmed, modified or reversed): _Affirmed_

What was the date of that decision? _(unk)_

If you filed a petition for discretionary review after the decision of the court of appeals, answer the following:

Result: _1st Appeal Remand ¦ vacate / 2nd Affirmed_

Date of result: _unk_         Cause Number (if known): _1052·03_

If you filed a petition for *writ of certiorari* with the United States Supreme Court, answer the following:

Result: _Denied    (see No. 04-9857)_

Date of result:  _6·27·05_

10. Other than a direct appeal, have you filed any petitions, applications or motions from this judgment in any court, state or federal? This includes any state application for writ of habeas corpus that you may have filed.

    ☒   Yes      ☐   No

11. If your answer to 10 is "Yes," give the following information:

    Name of court: _331 st Travis county_

    Nature of proceeding: _Habeas corpus_

    Cause number (if known): _90140 67 (A)  CCA # 50-484-06_

    Date (month, day and year) you <u>filed</u> the petition, application or motion as shown by a file-stamped date from the particular court.
    _10·17·5_

    Grounds raised: _exactly (see Attachments A)_

CONTINUED ON NEXT PAGE

Date of final decision: 3 - 2 - 6 _____

Name of court that issued the final decision: C C A _____

As to any *second* petition, application or motion, give the same information:

Name of court: N/A _____

Nature of proceeding: N/A _____

Date (month, day and year) you <u>filed</u> the petition, application or motion as shown by a file-stamped date from the particular court. N/A

Grounds raised: N/A _____

Date of final decision: N/A _____

Name of court that issued the final decision: N/A _____

*If you have filed more than two petitions, applications, or motions, please attach an additional sheet of paper and give the same information about each petition, application, or motion.*

12.  Do you have any future sentence to serve after you finish serving the sentence you are attacking in this petition?

              ☐    Yes        ☒    No

(a)  If your answer is "yes," give the name and location of the court that imposed the sentence to be served in the future: N/A _____

(b)  Give the date and length of the sentence to be served in the future: N/A _____

(c)  Have you filed, or do you intend to file, any petition attacking the judgment for the sentence you must serve in the future?

      ☐    Yes        ☒    No

CONTINUED ON NEXT PAGE

**Parole Revocation:**

13.     Date and location of your parole revocation: _____

14.     Have you filed any petitions, applications, or motions in any state or federal court challenging your parole revocation?

      ☐    Yes        ☐    No

    If your answer is "yes," complete Question 11 above regarding your parole revocation.

**Disciplinary Proceedings:**

15.     For your original conviction, was there a finding that you used or exhibited a deadly weapon?    ☐ Yes   ☐ No

16.     Are you eligible for mandatory supervised release?   ☐ Yes   ☐ No

17.     Name and location of prison or TDCJ Unit that found you guilty of the disciplinary violation:

    _____

    Disciplinary case number: _____

18.     Date you were found guilty of the disciplinary violation: _____

    Did you lose previously earned good-time credits?   ☐ Yes   ☐ No

    Identify all punishment imposed, including the length of any punishment if applicable, any changes in custody status, and the number of earned good-time credits lost: _____

    _____

19.     Did you appeal the finding of guilty through the prison or TDCJ grievance procedure?

      ☐    Yes        ☐    No

    If your answer to Question 19 is "yes," answer the following:

    Step 1  Result: _____

    _____

    Date of Result: _____

    Step 2  Result: _____

    _____

CONTINUED ON NEXT PAGE

Date of Result:  N/A

## All applicants must answer the remaining questions:

20.     State <u>clearly</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting them.

  **CAUTION:**
  <u>Exhaustion of State Remedies:</u> You must ordinarily present your arguments to the highest state court as to each ground before you can proceed in federal court.
  <u>Subsequent Petitions:</u> If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

Following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement is a separate ground for possible relief. You may raise any grounds, even if not listed below, if you have exhausted your state court remedies.  However, <u>you should raise in this petition all available grounds</u> (relating to this conviction) on which you base your belief  that you are being held unlawfully.

<u>DO NOT JUST CHECK ONE OR MORE OF THE LISTED GROUNDS</u>.  Instead, you must also STATE the SUPPORTING FACTS for ANY ground you rely upon as the basis for your petition.

(a)  Conviction obtained by a plea of guilty which was unlawfully induced, or not made voluntarily, or made without an understanding of the nature of the charge and the consequences of the plea.

(b)  Conviction obtained by the use of a coerced confession.

(c)  Conviction obtained by the use of evidence gained from an unconstitutional search and seizure.

(d)  Conviction obtained by the use of evidence obtained from an unlawful arrest.

(e)  Conviction obtained by a violation of the privilege against self-incrimination.

(f)  Conviction obtained by the prosecution's failure to tell the defendant about evidence favorable to the defendant.

(g)  Conviction obtained by the action of a grand or petit jury which was unconstitutionally selected and impaneled.

(h)  Conviction obtained by a violation of the protection against double jeopardy.

(i)  Denial of effective assistance of counsel.

(j)  Denial of the right to appeal.

(k)  Violation of my right to due process in a disciplinary action taken by prison officials.

- 6 -
CONTINUED ON NEXT PAGE

Eviden iacy Hearing s Requested

A. **GROUND ONE:** It is a miscarriage of justice to allow Petitioner to be illegally confined when the record does not show he broke the law

Supporting FACTS (tell your story briefly without citing cases or law):

C.C.A's denial is contrary to federal law

See States file for Exhibits on all five grounds they are incorporated by reference as if fully set out herein.

(See Attachment A)

B. **GROUND TWO:** The denial of effective assistance of counsel was sufficient to undermined the confidence in the outcome of trial

Supporting FACTS (tell your story briefly without citing cases or law):

C C A's denial is contrary to federal law

(See Attachment A)

C. **GROUND THREE:** There is a grave doubt as to the correctness of the Jurys verdict due to constitutional violations

Supporting FACTS (tell your story briefly without citing cases or law):

C C A s denial is contrary to federal law

(See Attachment A)

CONTINUED ON NEXT PAGE

D.     **GROUND FOUR:** Petitioner has been subjected to cruel and unusual punishment while being illegally inhanced to the Statutory max

Supporting FACTS (tell your story <u>briefly</u> without citing cases or law):

CCA's denial is contrary to federal law (Petitioner combined Ground 4 & 5 due to space constraints)

(See Attachment A)

21.    Have you previously filed a federal habeas petition attacking the same conviction, parole revocation, or disciplinary proceeding that you are attacking in this petition?

☐     Yes          ☒     No

If your answer is "yes," give the date on which <u>each</u> petition was filed, the federal court in which it was filed, and whether the petition was (a) dismissed without prejudice or (b) denied.

22.    Are any of the grounds listed in paragraph 20 above presented for the first time in this petition?

☐     Yes          ☒     No

If your answer is "yes," state <u>briefly</u> what grounds are presented for the first time and give your reasons for not presenting them to any other court, either state or federal.

- 8 -                                                        CONTINUED ON NEXT PAGE

23. Do you have any habeas corpus proceedings or appeals now pending in any court, either state or federal, relating to the judgment or proceeding under attack?

☐   Yes        ☒   No

If "yes," identify each type of proceeding that is pending (i.e., direct appeal, art. 11.07 application, or federal habeas petition), the court in which each proceeding is pending, and the date each proceeding was filed.

_____

_____

Wherefore, petitioner prays that the Court grant him the relief to which he may be entitled.

_____
Signature of Attorney (if any)

_____

_____

_____

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____3 · 27 · 6_____ (month, date, year).

Executed on _____3 - 27 - 6_____ (date).

_____
Signature of Petitioner (<u>required</u>)

Petitioner's current address: ___Rt. 2 Box 4400___

___Gatesville TX 76597___

Attachment A

## OPENING

C.C.A. denied Petitioner's State writ citing no cases at all. Petitioner does not know whether the C.C.A. properly and/or purposefully considered Petitioner's claims and denied it on the merits but without explaining it's denial or citing any case law, or whether due to some mistake by the C.C.A. the court didn't consider or adjudicate the Petitioners claims. The facts however require "a contrary to review". (See Attachment B)

The questions presented to the state are now in controversy here based on the C.C.A.s failure to apply well established U.S.S.C. law to whether or not (1) any error had a substantial and injurious effect in determining the jury's verdict that would leave this court with "a grave doubt" about whether the error had a significant effect on the verdict, (2) whether counsel's errors were sufficient to undermine confidence in the outcome of the case, (3) errors of a constitutional magnitude that was discovered during the direct appeal and (4) structural error. In this case there are at least (2) explanations to what happened and (100) possibilities. It literally might have and might not have happened the way the state or defense charged; Petitioner is confined based on hypotheticals.

(1)

Question 18 (Attachment A) Grounds raised in State writ

## (A) Ground no. One (1)

The record does not establish that applicant broke the law and allowing him to be illegally confined is a miscarriage of justice.

## (B) Ground no. Two (2)

The denial of effective assistance of counsel was sufficient to undermine confidence in the outcome of the trial.

## (C) Ground no. Three (3)

Applicant's constitutional rights were violated during trial causing a grave doubt as to the correctness of the jury's verdict.

## (D) Ground no. Four (4)

Applicant has been subjected to cruel and unusual punishment.

## (E) Ground no. Five (5)

Applicant's conviction was illegally enhanced to the statutory max.

◯ - are combined in fed. writ Ground # 4 to save space (see fed writ)

Question 18 (Attachment B) Facts

## (A) Ground no. one (1) Facts

A full recitation of the facts would be voluminous. However, applicant would show that a full understanding of the facts and record is essential to his grounds presented for review. Applicant is only able to provide basic factual allegations and refers this honorable court to the trial record. (Appendix A)

NO precedence exists that would allow a jury to infer every element of the crime through open inference. Circumstantial evidence. A suspicion based on an opportunity is not enough to establish guilt. Note: the states whole case is open to varying inferences, Save one — — venue, and without the presumption applicant is innocent.

How could applicant be guilty when the record does not establish his actions broke the laws of the state or the united states. The record simply does not demonstrate that applicant knowing or intentionally caused the victims death making the jury's verdict wrong and unjust.

NO cause of death can be determined through the autopsy (Exhibit "1"). (vol. II 178 - 198) like asphyxiation (see indictment)

NO evidence provided by the autopsy links applicant to the crime.

NO evidence shows applicant used threats or a deadly weapon to commit the offense.

NO eyewitnesses came forward to state applicant broke the law.

NO evidence links applicant to the crime scene. (vol. IV 132 - 167)

NO evidence shows applicant restrained the victim by use of threats of deadly force or secreting her. (vol. III 285 - 389)

(B 1)

NO evidence shows the victim was robbed, kidnapped or sexually assaulted.

NO credible evidence puts the victim in the company of the applicant on the day she disappeared. (vol. IV 174-239)

The state has statutes that describe concrete behavior, in order to violate those statutes the concrete behavior must be consistent with the actions of the accused. In this case applicant's actions do not meet these statutes. See Tx. penal code § 19.02, § 19.03, § 20.01 (2), 20.03, § 25.01(a)(1), § 22.021 (a)(2). The state must establish through direct evidence that the accused's actions are consistent with the statutes and they did not. The same with the charging instruments manner and means. In this case it specifically states asphyxiation not homicidal violence of an unknown type. The charging instrument was quashed once for being to vague so it would seem that the state would have to prove asphyxiation or amend the indictment. Asphyxiation was inferred it might have or might not have happened NO typical signs present.

NO reasonable jury can find applicant guilty if the prerequisites of the statutes are not proven beyond a reasonable doubt, they cannot do this when evidence suggests the victim might have been or might not have been robbed, kidnapped or aggrevated sexually assaulted. But the statute remains limited to the concrete behavior described. There is no way anybody could have been convicted on less evidence. It would seem that the state is giving the applicant to much credit it's pretty dang hard to fake a crime scene when there is just to much a crime scene investigator I can do in the 21 century. Remember there is NO evidence linking applicant to this crime other than the victim was reportably on her way to work NO evidence shows she even made it to the applicant's home, this is strikingly significant [The c.s.i. would like everyone to believe that the evidence found at the crime scene linked petitioner to the crime but the c.s.i. said they did not link him.

The DNA evidence in this case does not even establish guilt.

The states own evidence Gives applicant a solid alibi through the data collected from the use of his cell phone. Applicant cannot be in two places at the same time. (vol. IV 174-237) This would mean that the states 2 young witnesses Sanchez and Rodgers testimony was not credible when they placed the victim at the applicants home the day she disappeared. The Statute requires that the applicant must have to restrain the victim, accomplish more than a mere preparation for restraint, restrained the victim without her consent or acted with specific intent to prevents the victims liberation. No evidence shows this happened, neither witness indicated that the victim was restrained or that the applicant had a weapon or used deadly force, or observed or overheard any physical altercation. Neither testified that they even suspected or had any reason to believe a kidnapping was in progress (vol. III 280-360). So how can the applicant be guilty of kidnapping. Again evidence, factual evidence, shows that applicant was in a completely different county using his cell phone when the States 2 young witnesses say they saw him at his home in Hays county. There's no way around this valuable evidence! The state say the crime happened in the AM then put witnesses on saying it happened in the afternoon. There is No evidence the victim was kidnapped, even though the victim was found at a remote location there is No evidence she was alive on arrival, physical evidence suggests she wasn't. (vol. IV 132-166) (See also the autopsy report) The applicants actions to kidnapp the victim to the extent there are ▪ any fails to meet the prerequisite of the States statutes § 20.01 (2) and § 20.03 of the tx. pen. code

No evidence supports a robbery. In fact Det. Hilcrest testified applicant pointed a ring out that might have been the victim's and testified also that applicant was planning on giving it back if it was infact her's. without any other evidence to the contrary the applicant did not form any intent to obtain or maintain control of that ring. this ring was not the subject of the search. moreover, No

evidence establishes when the ring came into applicants possession or how it did. NO evidence even suggests this ring was being worn by the victim when she disappeared. (Vol. III 33-97, 133-178, Vol. X 13-106). The victims car and purse were found on the route between her home and work and nothing was touched this fails to support the inference of robbery. So how could the applicant be guilty of committing this crime.

NO evidence exists that would establish applicant committed or attempted to commit an aggravated sexual assault as described by § 22.01 (a)(1) or 22.021(a)(2) when the Travis County's m.e.s office stated there was NO evidence that the victim was sexually assaulted or even had sex prior to her death (vol. X 178-198). So how can the applicant be guilty of this crime.

The only reason the state argues that a sexual assault occurred is because the body was found naked and splayed. This evidence does not establish applicant's guilt. Deputy Jones testified that her clothes could have been removed to prevent iden-tification and the body's position was consistent with being carried and dumped.

The Question remains the same today as it was at trial: what didn't the police find -- NO evidence linking applicant to this crime other than the fact that the victim was on her way to his home to pick up some work. Evidence suggests she never even made it to his house, So how can the applicant be held responsible for something he had no part in, without the presumption that murder and kid-napping must have been committed by him when no law.

Applicant requests an evidentiary hearing. All exhibits and appendices are incorporated by reference as if fully set out herein.

Question 18 (Attachment B) Facts (cont.)

(B) Ground no. Two (2) Facts
<u>Error no.(i)</u>

<u>No</u> reasonable attorney would have failed to test and challenge the States case by presenting reasonable doubt and factual evidence on behalf of the defendant if it was availible. In this case, Davis rested on the preceived weakness of the states case knowing such evidence was availible. Davis had an obligation to present the facts beneficial to the defense (1) Gene-Screen's D.N.A report was not presented to the jury ,(2) Eye witnesses were not presented to the jury ,(3) Davis failed to test and challenge Beverly Johnson's harmful hearsay testimony ,(4) Davis failed to obtain facts of applicant's back ground[1], and (5) Davis failed to put on cause-of-death evidence. Through the use of these (5) five factual assertions Davis could have dispelled the main adverse inferences of guilt the state left hanging in front of the jury. Davis' failure to present these facts caused applicant harm.

    Davis tempted fate when he decided to forego such a factual presentation and rested on the preceived weakness of the states case. whether Davis failed to investigate such facts or simply chose not to present them to the jury was unreasonable professional conduct because applicants case was circumstantial and the states <u>whole</u> case was open to varying inferences. Failing to use known facts in applicant's best interest left the jury to believe the states case, and the states account of the facts were the only account of the facts the jury heard.

---

[1]. Tom Webber was applicants trial attorney prior to IRA DAVIS who was fired during a ferretta hearing for not doing his job for ove- 1¹/₂ years (Exhibit 3)

A tactical decision to pursue one defense does not excuse the failure to present another defense that would bolster the defenses case rather than detract from it. NO reasonable attorney would have overlooked such factual evidence. The value of this type of evidence in this type of case is high, little is more damaging than to fail to produce important evidence at trial.

The following factual issues had great potential to aid applicants case:

First and foremost, Gene screen's DNA report showed that there was unknown female DNA under the dead victims finger nails. This factual assertion demonstrates a reasonable doubt. This was not investigated by the State nor raised in the defense of applicant's guilt. This was paramount to applicant's case (vol. I 4-5). This is strikingly significant (1) it challenges the States version of what really did happen to the victim and (2) it calls attention to the states failure to thoroughly investigate their case. (Exhibit 2)(see also Exhibit 5)

The DNA permitted to the jury does not establish applicant's guilt!

The court can glean that Davis knew about this evidence prior to trial even though he never put on Gene screens expert or questioned the states expert (vol. V 143-180). Failure to broach this subject harmed applicant (see also vol II Pg 4-8) The court made an emergency session solely for the purpose of defendants expert The Davis failed to call him

Similar police had eyewitnesses that saw 2 vehicles just feet from the body at the Platt lane field. Questioning the witnesses they would have averred that neither truck belonged to the applicant. This is also reasonable doubt evidence, failure to call these witnesses harmed applicant. (Open Back Discovery)

Moreover, Davis failed to test and challenge Beverly Jonnson's harmful hearsay testimony. This testimony created an adverse inference of guilt (1) The testimony was engineered to establish the applicant was very familiar with the

store's surroundings, and (2) the inference was open to the fact that applicant had other checking accounts. (See below) making facts and her credibility more truthful.

Johnson worked at the Randles Store on Ben White where the victims car was found and left. She identified applicant as a regular check casher. She indicated that she remembered him from an incident wherein applicant tried to cash a check after hours with his "Randles Remarkable Card" (Vol. IV 85-88). The authorities never discovered such a card in applicant's possession or at his home. In fact, they never discovered any evidence that he ever had one, and none of the checking account information reviewed involved a check to or stamped by Randles (Vol. V 5-13,90). Upon further questioning she stated all those records were destroyed prior to his trial. Applicant sat in jail for 2(t) years waiting to go to trial, this evidence was available since December, 1999, NO one bothered to investigate this thoroughly. Johnson's testimony put applicant at a crime scene without no way to defend against her truth when Davis failed to test and challenge her testimony with other facts available to him prior to trial (1) he had at his disposal personal and business records that showed: he did not have another checking account, and proof he only cashed checks at american check cashing (Exhibit 9 See reverse side of I.S.F. check States Exhibit __ ) (2) questioning other witnesses such as her supervisor, accounting personnel, and other employees to verify or discredit her testimony.

A factual presentation of evidence would have aided defenses case. But, without objection from Davis this harmful hearsay testimony affected defenses case, whether Davis failed to investigate or chose not to present such evidence his unprofessional conduct harmed applicant. (Applicant also raises the relevance of Angel Renfroe's testimony and claims it too was harmful to his case see vol. III 244-263) Gibbs statement during Renfroe's testimony was solely to relate the jury Davis won the objection but court still pushed to make an irrelevant testimony seem more incriminating guilty Davis' failure to investigate applicant's background and habits harmed

the applicant's case. Counsel never even brought up available evidence showing the victims Death as an accident which would have caused different results.

The state raised theories that because applicant was broke he committed this crime and stoled a #10.00 ring. Facts were available that applicant made a good living. Davis could have easily disspelled any inferences the state had left by presenting evidence available. The check cashing service shown above would have testified applicant cashed aproximatdy #50,000 worth of checks in the prior 12 months and approximately half of that came from the state of texas in the last 3 months before applicant was arrested. Davis could have proved applicant did not have any other checking accounts. Davis' Failure to present such a factual presentation either through Rebuttal or defense witnesses left adverse inferences of guilt. This is first year lawyering simple investigation of clients claims, background and habits this never even came up during conversatives between lawyer/client.

more over, Davis Failed to call applicant's wife to the stand allowing her to testify about how the police targetted the applicant for desparate treatment because of his background (see Exhibit 5). Indeed, his wife even had information about applicant and the victims relationship that would have disspelled other adverse inferences of guilt. (Exhibit 5 shows the subject of her testimony) the state already told the jury that he was already on probation the defense had nothing to lose with her testimony.

Lastly Davis failed to test and challenge the elements of the offense through expert testimony (Exhibit 1). In this case the cause of death really could not be determined. This is not accumulative evidence but evidence that specifically shows that the victims death could not be explained. therefore, the concrete behavior spelled out in the indictment was challengible with facts available from a reliable source. without objection by Davis the charge was given to the jury based on information not in the indictment, an indictment quashed once for being to vague. The states case left the jury with suppositions and guesswork the adverse inference of guilt could have been disspelled because of facts frost could have used not just challenging the states case but enlightening

the jury about just how much evidence is lacking in this case. A Factual presentation not left to supposition would have potentionally aided applicants case. Davis' Failure to bolster the defenses case harmed applicant.

In discussion, what makes these deficiencies so unreasonable is that Davis made a choice not to put a single witness on the stand in a capital murder case. He sought only to defend through cross examinations of the state's witnesses. This Stinks of Malfeasance! whether Davis only had 2 months to prepare or that he made a conscious decision not to present a reasonable doubt defense permits an inference of ineffectiveness on his part.

The applicant charges with his claims relying strongly on Stricklands emphasis of what is fundimentally fair, Applicant was fighting for his life! this is strikingly significant because the facts availible and not presented equates to the constitutional errors complained of above that meets the first prong of Strickland. FACT: The 6th USCA and the Texas constitution Art. 1 § 10 and its due process clause requires that the applicant have counsel acting as an advocate and also requires the states case to survive the crusible of meaningful adverserial testing. the states whole case was open to varying inferences except for venue. The testing of it envisioned by the law has not occured on account of the process has lost its character as a confrontation and this is what applicant complains about. Applicant had a right to this defense Davis cannot argue he didnt know of or have the information above and there's really nothing what else he had or did not investigate. It is not like this case had no benified defense applicant demonstrated this to the contrary.

In this case Davis gave off the impresion that he was not really prepared for trial, he never discussed the case through to rest with the applicant. It seemed he was constantly changing his mind midway through a subject,

and like he was only prepared to cross examine the states witnesses, when he could have really put on a defense that would not have dissected the applicant's best interest. This case is constitutionally compelled and Davis' choices to only cross examine the states witnesses fell outside the wide range of acceptable conduct, making applicants rights non-existent.

The missing defense would have likely succeeded because facts have persuasive effect on inferences. The facts not permitted applicant at trial alters the entire evidentiary picture it's not just some isolated trivial effect It goes streight to a reasonable doubt defense and thats what his case needed to shake off the states allegations that could have gone one away or the other.

Applicant thinks Davis' actions betray a startling ignorance of the law or an intentional deprivation. If these errors were caused by a lack of pretrial preparation it put at risk both applicants right to an ample opportunity to meet the prosecution head on and the reliability of the adversarial testing process as a whole. If it was an intentional deprivation.... Please don't get me wrong counsel may have performed well in other aspects like : his vigorous cross examination to discredit the prosecutions witnesses and his effort to establish a different version of the facts -- in this case inferences -- then put forth by the state, But, this still does not cure Davis' failure to put on a defense positive factual presentation to disspell the harmful inferences left by the states witnesses In a capital case, exactly how many capital murder cases go unchallenged by the defense when factual & rebuttle evidence is available. This demonstrate the lack of preparation.

This clearly compells a finding of prejudice.

Davis was appointed to this case to ensure applicant received the necessary assistance. In this case something had to be prejudicial and/or harmful applicant contends that these acts and/or omissions contributed to his punishment -- it was vastly increased accordingly -- there was harm. Had it not been for these

errors the jury would have had to do their bound duty presumed by law. Deficiencies stated -- Prejudice, Ineffective Assistance of counsel!

Applicant requests and evidentiary hearing. The exhibits are incorporated by reference as if fully set out herein.

(This space left blank intentionally)

(B11)

ERROR no. 2

In violation of applicant's constitutional rights Davis (1) failed to object and preserve error prior to trial that due to an overtly discriminatory classification applicant was subjected to a focussed prosecution, (2) failed to object and preserve error that Beverly Johnson's testimony was prejudicial and Hearsay submitted to the jury solely for its truth, (3) failed to object and preserve error contesting materiality issues before the jury, (4) failed to object and preserve error that prosecutions opening and closing arguments were based on evidence not in the record because their whole case was open to varying inferences, (5) ~~signed~~ failed to object and preserve error that the judge made a coercive allen charge, (6) failed to object and preserve error that the jury charge amended indictment because the omission of an essential element changing asphyxiation to homicidal violence, (7) failed to object and preserve error that because of the weight of evidence against applicant the mandated life sentence required by the capital murder statute is cruel and unusual punishment and (8) failed to raise clear and convincing evidence for the need for a new trial or augmentation of the record through a Bill of Exceptions for his failure to submit crucial reasonable doubt evidence supported by expert witness from Gene Screen.

An evidentiary hearing is requested.

ERROR NO. 3

In violation of applicants constitutional rights applicant was denied effective assistance of counsel on appeal (1) counsel failed to raise ineffective assistance of counsel on appeal in a motion for new trial or Bill of Exception to augment record providing the required affidavits and request for hearing based on the merits discussed in ERROR no. 1 of this Section, (2) counsel failed to argue the illegal enhancement to the statutory max based on (A) Ground no. one (1) and (3) counsel failed to raise and argue all preserved errors prior to, during, and subsequent trial and the errors in the foregoing for appellate review. All Three of these errors are in the record, and the weight of evidence against applicant requires it.

Applicant requests evidentiary hearing.

Question 18 (Attachment B) Facts (Cont.)

(C) Ground no. Three (3) Facts

ERROR no. 1

The use of graphic photographs that had a potential to Prejudice

---

Davis objected to the accumulative and gruesomeness of the photos presented to the jury depicting the body of the victim naked, decomposing and decapitated by nature. Because the States whole case was open to varying inferences there was a potential for prejudice (Appendix A)(see Defense objections to photographs)

Common-sense and logic states that this constitutional error contributed to punishment -- it was vastly increased accordingly -- there was harm. A potential for prejudice was imminent because the photos would draw the jury's sympathies to the States case even though the pictures do not establish the applicant's guilt or link him in any way to the dead body or the crime scene. Allowing these photos to be presented in the way they were by the prosecution was a clear abuse of discretion.

Cobb charged with these pictures to appeal solely to the passions, prejudices and sympathies of the jury. The M.E.'s office testified they could not determine the cause of death (vol.V 173-198).(see also Exhibit 1).The police and crime scene investigators testified that there were no physical pieces of evidence or scientific evidence that pointed to the applicant as the person who committed this crime. (vol.

(B ·3)

IV 132-167, 239-269). Therefore, the information cobb extracted from these photos (which could have also been obtained through other evidence and testimony) caused a potential for prejudice.

These pictures were detailed color photos, close up, and enlarged to draw attention to the graphic and heinous details of the crime namely, the decapitation and decomposition of the body. Flipping back and forth from a pretty young woman to her decomposed state with cobb tapping frequently and repeatedly on the pictures and pointing out the applicant reminding the jury again and again that HE is the only one who stands accused of this crime. These redundent reminders overwhelmed the jury and covered up the lack of states evidence against him.

This was obviously an amazingly horrific crime. However, there was no eyewitnesses, no physical or scientific evidence pointing at the applicant and no credible evidence placing applicant in the company of the victim but these photos caused: tears, horrified expressions, postures of recoil and Jury Alienation. The use of these pictures were not used for their probative value. These pictures do not establish the applicant's guilt and they shouldn't have been allowed to be used that way. You cannot put the states evidence together and say that because of this the applicant did that. The State cannot even say applicant might have done it based the evidence in the record. Why is the applicant's guilt so highly contested? because the evidence suggests that the victim never made it to work and the victim might of or might not have been robbed, kidnapped or aggrevatedly sexually assaulted. in reality this conviction was sought because hes SO Thus, the use of these prejudicial photo's causes a grave doubt as to the correctness of the jurys verdict.

1. Petitioner was a sex offender and this case created a political agenda. Defense had to request a T.R.O. against the D.A. because he was trying this case in the media for reelection.

ERROR NO. 2

The use of inadmissible character evidence and prosecutor misconduct

First, applicant is entitled to a trial based solely on the facts of the case specifically the concrete behavior spelled out in the indictment. It is law that the jury is not allowed to consider irrelevant extraneous transactions. In this case, Cobb elicited inadmissible evidence through the back door when he was told not to bring up the fact that the applicant was on probation (vol. I. 15) The applicant was not even convicted of a crime at that time. This contributed to punishment - - it was vastly increased accordingly-- there was harm.

Even though Cobb reportably states he told his witnesses not to mention the fact applicant was on probation there can be no other inference drawn from Det. Gilcrest's testimony other than the fact that applicant had previous problems with the law. While simply informing the jury that the applicant was on probation may seem unsubstantial but it stinks of malfeasance! Such could very well have been the information which ultimately convinced the jury to return a verdict of guilty. Even with the judges instructions it would be very difficult to ignore the inferences associated with such evidence. Being on probation gives the applicant a seedy character- no matter what and character evidence was specifically avoided by the defense. So such evidence is inadmissible and causes a grave doubt in the correctness of the jurys verdict

Moreover, Cobbs closing arguments also stink of malfeasance specifically his use of this Bully Pulpit to condem the applicant by

(B16)

arguing facts not in the record, proclaiming applicants guilt for not taking the stand, putting on a defense, allowing his wife to testify, making personal opinion comments, using sexual innuendos and throwing (physically) evidence accross the court room hitting applicant in the chest solely to inflame the jurys passions, prejudices and sympathies. (vol. VII 13-24, 61-82).

It is amply clear that cobb was able to use and repeatedly substitute emotion for his best evidence, Instead of charging with facts of the crime which was his burden to prove in the first place. with out objection from & Davis cobb called attention to the absence of evidence that only the applicant could provide. State and federal law provides that applicant should not be compelled to be a witness against him-self, it guarantees an ABSOLUTE right to silence should he choose to exercise this right cobb is lawfully restrained from making adverse comments based on the applicants assertion of this right. Indeed the constitution is clear by stating: GOD BLESS YOU SIR -- GOD BLESS You DAVID LANIER you do not have to explain anything. the applicant cannot enjoy this blessing if cobb is allowed to improperly influence the jury's verdict. This contributed to punishment -- it was vastly increased accordingly -- there was harm. Cobb's actions causes a grave doubt as to the correctness of the jurys verdict.


(Space Left Blank intentionally)

ERROR NO. 3

The use of prejudicial harmful testimony

Three times the state put on witnesses who had pre-judicial harmful testimony (1) a friend of the victim had a similar ring to the ring found by the applicant at his home but could not produce he-ring at trial (2) Beverly Johnson's testimony was engineered by the state to put applicant at a crime scene and (3) Angel Renfroe's testimony, were all placed in front of the jury for their ~~truth~~ *Harmfulness*. These (3) three issues contributed to punishment -- it was vastly increased accordingly -- there was harm. This testimony causes a grave doubt as to the correctness of the jurys verdict. (See Ground two (2)).

Applicant requests an evidentiary hearing based on the three (3) errors presented in Ground three (3).

(Space left blank intentionally)

(B 18)

Question 12 (attachment b) facts (cont.)

### (D) Ground number four (4) facts

The texas capital murder statute requires that if a finder of fact finds a defendant guilty of capital murder and if the death sentence is not sought a life sentence is mandated. Therefore, Appellant was not permitted to show the jury mitigating factors or aggravating circumstances for that the jury could use a true proportionate punishment. This is a device used [to] ??? the state and allows it with the prosecution's capacity to pick the applicant in this case have violated his rights and the prosecutor's ability to do so was arbitrary and capricious.

In this case, Applicant's guilt is highly contested because the state is unable to present sufficient evidence for ??? forcing the jury to infer every element of the offense or circumstances without facts suggested (i) No Evidence shows Applicant acted the way without the use of the pre-emption, the evidence is insufficient, (2) the state has evidence the applicant did do this but never gave or would not present such evidence to the jury, and there issues among others would raise important circumstances. Based on the information in the record, it was just a likely that the jury could have found ??? ??? ??? ??? ??? See openbook discovery this was also available to the defense and was not hse

Even though the state do not ??? them that the action might have been or ought to have been capital murder and kidnapped should the weakness of the state to call it as kidnapping in a case like this where the Applicant is convicted on ??? at ??? support ??? ???, guilt need ??? guessing ??? ??? In this case there a NO ??? ??? ???

Question 12 (Attachment B) Facts

(E) Ground no. five (5) Facts

In this case applicant's conviction under the capital murder statute is far reaching, applicant contends that his conviction under said statute is illegally enhanced to the statutory max. See ground no. one (1). Remember the state had evidence of an accident but did not produce it at trial.
An evidentiary hearing is requested.

(This space left blank intentionally)

Attachment "2"

OFFICIAL NOTICE FROM COURT OF CRIMINAL APPEALS OF TEXAS
P.O. BOX 12308. CAPITOL STATION, AUSTIN, TEXAS 78711

RE: Writ No. WR-50,484-06
STYLE: Lauer, David D.
TRIAL CT NO: 9014067-A
3/8/2006

$ 00.24⁰

Dec 3 13⁶

     This is to advise that the Court has denied without
written order the application for writ of habeas corpus.

                                   Louise Pearson, Clerk

        David D. Lauer
        Hughes Unit - TDC #1069082
        Rt. 2, Box 4400
        Gatesville, TX 76597